[706 NYS2d 419]

Yoriko Ohdan, Appellant, et al., Plaintiffs, v City of New York, Respondent, et al., Defendants.

First Department, April 27, 2000

APPEARANCES OF COUNSEL

*Robert M. Ginsberg* of counsel (*Ginsberg & Broome, L. L. P.,* attorneys), for appellant.

*Susan Choi-Hausman* of counsel (*Barry P. Schwartz* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for respondent.

### OPINION OF THE COURT

SAXE, J.

In the early evening rush hour of April 28, 1992, on West 48th Street between Broadway and Seventh Avenue in midtown Manhattan, New York City Traffic Enforcement Agent Audrey Jolly was performing her customary traffic duties of ticketing illegally parked cars and ordering cars to be moved from designated No Parking or No Standing Zones. While patrolling this area, Agent Jolly came upon a car illegally parked in a No Standing Zone. Defendant Jose Rodriguez was waiting in the car for his nephews, who were apparently visiting a nearby music store. Agent Jolly approached the car and told Mr. Rodriguez to move it or else a ticket would be issued. Conflicting testimony was offered at trial as to the agent's voice level in her directives to Mr. Rodriguez, and as to the possibility of a language barrier between Mr. Rodriguez and Agent Jolly.

Nevertheless, it was established that after this first warning, Agent Jolly continued on down the street in order to perform her official functions, and Mr. Rodriguez went inside the store to locate his nephews, but was unsuccessful, and returned to the car. When Agent Jolly returned a few minutes later and saw the car still parked illegally, she reportedly yelled at Mr. Rodriguez, banged on the car and again ordered him to move. Although he possessed neither a driver's license nor any knowledge of how to operate an automobile, Mr. Rodriguez nevertheless attempted to obey Agent Jolly's orders, and in the process first backed the car onto the sidewalk, then caused it to tear across the street, crashing into a storefront and injuring several individuals.

These injured individuals brought suit not only against Mr. Rodriguez, but also against Agent Jolly, and through her, her employer, the City of New York and its Department of Transportation (the City defendants). Following a jury trial on the issue of liability, the jury found against Mr. Rodriguez; however, it held in favor of the City defendants on the issue of liability, finding that while they were negligent, their negligence was not a proximate cause of the accident. Plaintiff Yoriko Ohdan appeals from the dismissal of the claims against the City defendants, asserting that this portion of the verdict

is against the weight of the credible evidence. The crux of her argument is that once the traffic agent was found to have acted negligently, it was irrational to conclude that this negligence was not a proximate cause of the accident.

A jury verdict is normally accorded great weight (*see, Mertsaris v 73rd Corp.*, 105 AD2d 67, 75). "[T]he discretionary power to set aside a jury verdict and order a new trial must be exercised with considerable caution, for in the absence of indications that substantial justice has not been done, a successful litigant is entitled to the benefits of a favorable jury verdict" (*Nicastro v Park*, 113 AD2d 129, 133). Before a verdict may be set aside when the weight of the evidence is challenged, the court must be able to conclude that the jury could not have reached its verdict on *any* fair interpretation of the evidence (*see, supra,* at 134; *Johnson v New York City Health & Hosps. Corp.*, 246 AD2d 88, 94, *lv denied* 92 NY2d 816).

Although the dissent terms the jury's findings "incoherent," the verdict can as easily be said to have been arrived at by thoughtful and careful analysis.

To find negligence, the jury had only to conclude that (1) the City's traffic enforcement agent had failed to exercise that degree of care which a reasonably prudent person would have exercised in the circumstances, and (2) a probable risk of harm was reasonably foreseeable from this failure (*see,* 1A PJI 2:10, 2:12). The exact injury that occurred does not have to have been foreseeable (1A PJI 2:12; *see, Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315). The foreseeable harm, as found by the jury, could have differed from the harm that actually occurred.

For instance, the requisite foreseeable harm from the agent's conduct could have been something entirely different, such as the possibility of emotional or psychological harm to the individual who was being verbally browbeaten. Or, the foreseeable harm might have been the possibility that a driver, although licensed and possessing the requisite skills, would be so upset by the uncivil treatment that he would fail to take normal precautions in attempting to abide by the officer's commands, causing a collision as a result. The jury need not have found it foreseeable that an unlicensed driver who had no knowledge of how to operate an automobile, such as Mr. Rodriguez, would foolishly attempt to drive the car despite his complete lack of skills or experience. On the contrary, the jury might have reasoned that Agent Jolly could properly assume that only a person who knew how to drive a car would undertake to do so

in response to her orders. Indeed, it can be argued that Mr. Rodriguez's conduct was so foolish and risky as to be entirely unforeseeable.

Although there is just a fine line between foreseeing harm from licensed drivers driving carelessly and foreseeing harm from unskilled drivers recklessly attempting to operate a car, it is a distinction that could have been drawn by the jury. As such, this distinction, which the dissent terms "artificial," presents a sufficient basis upon which to permit the verdict to stand.

The foregoing discussion of alternative lines of reasoning on the question of foreseeability is offered merely to illustrate that there exist numerous fair interpretations of the evidence upon which the jury could have based its finding of negligence; not all of them lead inexorably to a finding of proximate cause.

The issue of whether a defendant's negligence was a proximate cause of an accident is separate and distinct from the negligence determination. A defendant may act negligently without that negligence constituting a proximate cause of the accident (*see*, *Price v New York City Hous. Auth.*, 92 NY2d 553; *Gouna v O'Neill*, 149 SW2d 138 [Tex]).

In order to find that defendant's negligence was a proximate cause of the harm caused to plaintiff, the jury must find that the negligence was a *substantial* factor in bringing about the injury (1A PJI 2:70). There may be one, or more than one, substantial factor (1A PJI 2:71). Based upon the evidence, the jury was entitled to conclude that although both Agent Jolly and Mr. Rodriguez had behaved in a negligent manner, Mr. Rodriguez's negligent conduct alone was the only substantial factor in bringing about the injury. Indeed, the jury could rationally have concluded that no reasonable person in the position of Agent Jolly would have believed there to be any real probability that an individual with absolutely no knowledge of how to operate a car would attempt to do so in response to her verbal commands. That a few other individuals have in other instances acted as foolishly (*see*, *Maloney v Scarfone*, 25 AD2d 630; *Persaud v City of New York*, 267 AD2d 220), does not render such conduct probable or foreseeable (*cf.*, *Egan v A.J. Constr. Corp.*, 94 NY2d 839).

Plaintiff's reliance on *Maloney v Scarfone* (25 AD2d 630, *supra*) is misplaced. There, in a similar basic fact pattern, an unskilled individual had attempted to obey the orders of a traffic agent and move the car he was in, ultimately killing a pedestrian. However, the critical point in that case was that the

young man who operated the car testified at trial that he had informed the traffic agent of his inability to drive (*supra,* at 630). In contrast, there is no evidence supporting the conclusion that Agent Jolly knew (or should have known) that Mr. Rodriguez was unlicensed, since the only evidence on the point reflected that he conveyed this information in Spanish.

In *Maloney v Scarfone (supra)*, the jury arrived at a verdict against the City; however, on appeal, this Court ordered a new trial. A new trial was directed because the City had erroneously assumed that *regardless of its own agent's conduct,* the negligence of the driver of the vehicle was enough to constitute an intervening act absolving the City of liability as a matter of law; as a result of that assumption, the City had completely neglected to develop the strong evidence available to contradict the driver's assertions that he had informed the officer of his inability to drive (25 AD2d, at 631). Nothing in this holding prevents a conclusion that the negligence of the driver was the sole proximate cause of the accident. Indeed, in *Maloney*, it was apparent that if, upon retrial, the jury rejected the driver/defendant's testimony that he informed the officer of his inability to drive, the jury could then legitimately hold against the driver/defendant but not against the City. In the present case, the jury arrived at exactly such findings upon the evidence before it.

Nor does the case of *Persaud v City of New York* (267 AD2d 220, *supra*) require a different result. It holds that liability *may* be imposed on a police officer for directing a person sitting in the passenger seat to move a car, and that the issue of whether the officer should be held liable was one of fact to be left to the trial jury. In the case before us, this issue of fact was presented to the jury, and the jury, upon its view of the evidence before it, rendered its factual determination that the City was not liable.

The jury verdict in favor of the City of New York and its agents may be supported by a fair interpretation of the evidence, and must therefore be permitted to stand.

Accordingly, the judgment of the Supreme Court, New York County (Edward Lehner, J.), entered May 27, 1999, which, following a jury trial, awarded judgment dismissing the action as against defendant City of New York, pursuant to the jury verdict as to liability, should be affirmed, without costs.

ROSENBERGER, J. P. (dissenting). Because the jury's finding of negligence against the City cannot reasonably be reconciled

with its determination that the traffic agent's negligent conduct was not the proximate cause of the accident, a new trial is warranted.

This negligence action arises out of a traffic accident that occurred on April 28, 1992. Defendant Jose Rodriguez was waiting for his nephews in a car that was illegally parked in a "No Standing Zone" on West 48th Street between Broadway and Seventh Avenue. The car was owned by defendant Carmen Morales. Defendant Audrey Jolly, a traffic enforcement agent employed by defendants the City of New York and the Department of Transportation, approached and told him several times that he should move the car or else he would get a ticket.

Though Jolly claims she did not raise her voice, three witnesses who worked in stores on that block testified that Jolly was screaming at Rodriguez and banging on the window of the car. One of the witnesses said that he went inside the store to get away from the noisy disturbance that Jolly was making.

Rodriguez attempted to communicate to Jolly that he could not speak English and did not know how to drive. Another of the shopkeeper witnesses corroborated Rodriguez's story by saying he overheard Rodriguez say in Spanish that he could not drive. For her part, Jolly testified that when she asked him to move the car, he said something in "accented English," but she could not remember what it was.

Rodriguez then went to look for his nephews, but could not find them and returned to the car. Jolly returned a few minutes later and repeatedly ordered him to move, again allegedly screaming and banging on the car. Though admittedly unable to drive, Rodriguez attempted to move the car. In the process, he backed up onto the sidewalk, careened across the street, and crashed into a storefront, injuring the bystanders who are the plaintiffs in this lawsuit.

In the liability phase of the bifurcated trial, the jury unanimously found that Rodriguez was negligent and that such negligence was a proximate cause of the accident. However, by a vote of five to one, the jury also found that the City defendants were negligent but that their negligence was *not* a proximate cause of the accident. Thus, Rodriguez and Morales were the only defendants found liable to plaintiffs. Only plaintiff Ohdan and defendant City of New York are parties to this appeal.

Plaintiff Ohdan's claim of inconsistent verdicts is unpreserved for appellate review because she did not make a motion

to that effect before the jury was discharged (*Barry v Manglass*, 55 NY2d 803). However, the verdict was against the weight of the evidence, requiring a new trial. Such a conclusion is compelled when "the jury could not have reached its verdict on any fair interpretation of the evidence" (*Nordhauser v New York City Health & Hosps. Corp.*, 176 AD2d 787, 789).

The jury's findings as to liability are incoherent. The City was found negligent. It could only be negligent because its employee intimidated Rodriguez into moving the car in an unsafe manner. The risk that Rodriguez would feel compelled to move the car when Jolly continued to badger him without trying to understand his protestations that it was unsafe, as well as the risk that a driver flustered by her abusive conduct would be more likely to drive unsafely whether or not he was otherwise able to drive, were precisely the risks that made Jolly's harassment of Rodriguez negligent with respect to the plaintiff bystander. The majority admits that an authorized driver in the same position might foreseeably fail to take proper precautions because she was so upset by abuse from the traffic agent. If it is foreseeable that even an otherwise qualified driver would make foolish decisions under this type of pressure, it is equally foreseeable that an unlicensed person would do so, especially since he had no options but to move the car or endure abuse. In either situation, the traffic agent's abusive conduct directly caused the driver to exercise poor judgment in the operation of the vehicle. The specific error of judgment—either trying to drive when unlicensed, or failing to take normal precautions even though he possessed the requisite skills—should not matter. The majority would only find proximate cause in the latter situation, but this distinction seems artificial. The City can hardly argue that it was unforeseeable that Rodriguez would try to drive the car, when Jolly was stubbornly insisting that he do exactly that. In fact, had Jolly not behaved in this manner, it is unlikely that he would have attempted to drive at all.

This Court rejected just such a defense by the City in *Maloney v Scarfone* (25 AD2d 630, 631). There, as here, the person sitting in the illegally parked car was not licensed to drive, but the traffic officer ignored this objection and repeatedly ordered the passenger to move the car, "reinforcing his directive with an expletive" (*supra*, at 630). The "frightened" man drove the car for a few blocks before hitting plaintiff's decedent (*supra*, at 630). The City unsuccessfully argued that the driver's own negligence in driving the car when he knew himself to be unqualified was an intervening act that absolved the City of liability.

The majority cites *Maloney (supra)* for the proposition that if the traffic agent did not know of the driver's inability to drive, a rational jury could find the driver liable and absolve the City. While this is true, it is not the issue before us. The majority's comparison obscures a basic difference between *Maloney* and the instant case.

In *Maloney (supra)*, the driver was originally held liable but the trial court set aside the verdict against the City. We remanded the case for a new trial against the City because the parties had failed to explore the issue of the traffic agent's negligence, specifically whether he had known that the driver was unlicensed. Clearly, a jury could rationally absolve the City if it found that the agent was not negligent, and as noted above, this could be the outcome if a new trial were ordered in the instant case. What is not reasonable is the jury's finding that the City was negligent but not liable. *Maloney* did not deal with that fact pattern.

More recently, in *Persaud v City of New York* (267 AD2d 220), the Second Department denied summary judgment to the City and the police officer under circumstances very similar to the fact pattern in the instant case. In *Persaud*, the woman sitting in the car could not drive, but when the officer kept waving at her to move, she felt compelled to move the car. Since she was an unqualified driver, she lost control and injured a pedestrian. Significantly, the Court held that negligence liability could be predicated upon the officer's failure to inquire whether the passenger was licensed to drive before ordering her to move. "Once the police officer undertook to direct her to move the car, he was obligated to do so with due care * * *. Accordingly, the plaintiffs were not required to demonstrate a special relationship" (*Persaud v City of New York, supra*, at 220).

According to the majority, one can rationally conclude that no reasonable traffic agent would expect an unskilled person to attempt to drive in response to the agent's verbal abuse. Yet, the drivers in *Maloney (supra)* and *Persaud (supra)* did exactly that, which suggests that such a response is not so uncommon or unforeseeable after all. Whether the agent ignored the driver's claim of incapacity, as in *Maloney*, or was unable to understand it, as Jolly alleged, is irrelevant to the causation issue before us. The fact remains that Jolly, like the traffic agent in *Maloney*, was impervious to protests and obviously planned to badger the driver till he took action.

Conversely, if Jolly could not have been expected to know of Rodriguez's inability to drive, and if she was correct in testify-

ing that she did not raise her voice to him, the jury could have found that the City was not negligent. The jury, however, rejected these contentions and found negligence.

There is no merit to the City's other contentions that it cannot be held liable because of the "special duty" rule (*Balsam v Delma Eng'g Corp.*, 90 NY2d 966, 967) or because of officers' immunity from negligence liability for discretionary acts (*Tango v Tulevech*, 61 NY2d 34, 40). As a general rule, a municipality bears no liability for its agent's negligent performance of governmental functions unless the agent assumed a special duty to the plaintiff (*Balsam v Delma Eng'g Corp., supra*).

The special duty rule, however, was designed for cases where a plaintiff alleges that the City improvidently allocated its resources, such as by not assigning sufficient security personnel to an area (*Johnson v New York City Health & Hosps. Corp.*, 246 AD2d 88 [challenging security measures at mental hospital where patient entered unauthorized area and killed doctor]), or where a plaintiff challenges a failure to intervene more actively or effectively in a dangerous situation (*Balsam v Delma Eng'g Corp., supra* [failure to block road where dangerous ice condition was present]). In these situations, courts generally refuse to second-guess the governmental exercise of professional judgment.

Yet, as even defendant admits, the special duty rule has no relevance to cases where City officers actually inflict injury (*Rodriguez v City of New York*, 189 AD2d 166, 172; *Snyder v City of Rochester*, 124 AD2d 1019). As noted previously, the Second Department recently concluded in *Persaud v City of New York* (*supra*) that the officer's asking a passenger to move the car, without checking that this was safe, constituted an affirmative act of misfeasance, not implicating the special duty rule.

Defendant attempts to avoid the operation of these principles by arguing that any affirmative acts of misfeasance by Jolly were not the proximate cause of plaintiff's injuries. As discussed above, this argument contradicts the established case law of this Court (*Maloney v Scarfone* 25 AD2d 630, *supra*; *Persaud v City of New York, supra*).

Analogous principles operate to defeat the immunity defense, which in any event would only shield Jolly herself from personal liability (*Tango v Tulevech*, 61 NY2d 34, 40, *supra* ["Municipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago"]). Contrary to defendant's mischaracterization of the record,

plaintiff does not premise her negligence claim on Jolly's discretionary decision to ask the illegally parked drivers on that block to move their cars instead of issuing tickets to them, nor on the absence of a policy requiring traffic officers to inquire first whether the occupant of the car could drive. Rather, plaintiff alleges that Jolly's negligence consisted of harassing Rodriguez and ignoring his protests without making any effort to find out what he was saying. Such unprofessional behavior clearly does not fall within the range of discretionary decisions immunized by public policy. A "total failure to exercise discretion" can give rise to liability (*Mon v City of New York*, 78 NY2d 309, 316, *rearg denied* 78 NY2d 1124; *see also, Haddock v City of New York*, 75 NY2d 478). Immunity will not cloak the actions of an officer who "affirmatively intervened in a dangerous situation and negligently caused injury to a bystander, by acts which deviated from clearly accepted and established protocols and procedures" (*Rodriguez v City of New York, supra,* at 178).

*Kenavan v City of New York* (70 NY2d 558, 569), a case involving an allegedly negligent choice of firefighting procedures, imposes important qualifications on government employees' immunity: "liability will not be imposed where the firefighter's conduct involves the exercise of professional judgment such as *electing one among many acceptable methods of carrying out tasks*, or making tactical decisions that, in retrospect show poor judgment, *but judgment nonetheless*" (emphasis added). Surely the City does not mean to argue that physically and verbally intimidating an unqualified person into driving a car is a reasonable method of enforcing parking regulations.

NARDELLI and BUCKLEY, JJ., concur with SAXE, J.; ROSENBERGER, J. P., and ELLERIN J., dissent in a separate opinion by ROSENBERGER, J. P.

Judgment, Supreme Court, New York County, entered May 27, 1999, affirmed, without costs.