*376 OPINION OF THE COURT
Ellen M. Yacknin, J.
Plaintiff Jesus Ubiles has sued the Monroe County Sheriffs Department to recover the cost of repairing the damage that deputy sheriffs allegedly caused to his automobile. In response, defendant Monroe County Sheriffs Department asserts that even if deputy sheriffs damaged Mr. Ubiles’ automobile, the Sheriffs Department is immune from liability under the circumstances.
An arbitrator’s decision in this action was entered on April 27, 2006. Following a party’s demand, a trial de novo was conducted on July 6, 2006. Plaintiff Jesus Ubiles and Danielle Rogers testified for plaintiff. Deputy Sheriff Shawn Edwards testified for defendant.
To prevail in a civil action, plaintiff must show, by a preponderance of the credible evidence, that he is entitled to a judgment in his favor against defendant. Based on the credible testimony and documentary evidence presented in this action, the court makes the following findings of fact and conclusions of law.
Facts
On Sunday, August 7, 2005, plaintiff Jesus Ubiles and Danielle Rogers were having dinner at “Buffalo Wild Wings,” a restaurant in a shopping center in Henrietta, New York. The shopping center has a large parking lot to which, for the previous several Sunday evenings, hundreds of car owners had brought their cars for a weekly informal “car show.” Due to complaints of racing, screeching tires, and reckless driving at the weekly gathering, the Monroe County Sheriff’s Department had stationed several plainclothed deputy sheriffs at the shopping center on the evening of August 7, 2005.
That evening, 400 to 500 people arrived at the shopping center and parked their cars for the unofficial get-together. Between 8:30 p.m. and 9:00 p.m., a fight broke out between several people in the parking lot. According to Deputy Sheriff Shawn Edwards, who arrived on the scene after hearing a call about the fight, it was difficult to see the combatants because an extremely large crowd surrounded them.
While he waited for backup, Deputy Sheriff Edwards saw a man who was acting aggressively emerge from the large crowd. The Deputy Sheriff took the man to the ground to control him. Several people immediately surrounded him and the man he *377 had in his custody. At that point, Deputy Sheriff Edwards attempted to bring the man over to a nearby car in the parking lot. As he did so, other people began to threaten him. During this time, the parking lot was filled with people and cars, and the fight in the parking lot continued.
While the fight ensued, Mr. Ubiles and Ms. Rogers left the restaurant to return to Mr. Ubiles’ car in the parking lot. Upon leaving the restaurant, they saw a large commotion. In particular, they saw hundreds of people in the parking lot, several police cars, people swarming around Mr. Ubiles’ car, and Deputy Sheriff Edwards forcibly pushing a man who was handcuffed against Mr. Ubiles’ car. As Ms. Rogers watched, the handcuffs on the man caught the spoiler of Mr. Ubiles’ car. A law enforcement officer told Mr. Ubiles and Ms. Rogers that they could not take their car, and ordered them to stay out of the way.
Sometime later, when the crowd and commotion had subsided, Mr. Ubiles and Ms. Rogers went to Mr. Ubiles’ car and saw that the car had been damaged. The damages were located where the man in handcuffs had been pushed against the car. According to Mr. Ubiles, the cost of repairing the damage to his car total $3,250.
Legal Analysis
General Municipal Law § 50-j (1) provides that local governmental entities are “liable for . . . any negligent act or tort [committed by a police officer], provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment.” Notwithstanding this statute, with few exceptions, the “professional judgment rule” shields a government entity from liability for the negligent acts of law enforcement personnel. Under this rule, a municipality is immune from liability for a police officer’s negligent law enforcement activities if those activities involve the exercise of discretion and reasoned judgment, even if, in retrospect, the actions show poor judgment, provided that the officer’s actions are not inconsistent with acceptable police practice. (See Arias v City of New York, 22 AD3d 436, 437 [2d Dept 2005]; Lubecki v City of New York, 304 AD2d 224, 233-234 [1st Dept 2003], lv denied 2 NY3d 701 [2004].) Thus, for example, New York City was immune from liability for the death of a man shot by the police as the man attempted to sell illegal firearms to an undercover officer because “the *378 acts that resulted in [the man’s] death were undertaken by the police officers in the exercise of their professional judgment.” (Arias v City of New York, 22 AD3d at 437.)
In this case, Deputy Sheriff Edwards was in a dangerous and critical situation as he held a man in custody while a brawl ensued and several angry people surrounded him. When he shoved the man he had in custody against Mr. Ubiles’ car to control him, Deputy Sheriff Edwards exercised his discretion to choose “one among many acceptable methods of carrying out tasks.” (Lubecki v City of New York, 304 AD2d at 233.)
A number of exceptions to the “professional judgment rule” immunity doctrine exist. None, however, applies in this case. First, the “professional judgment rule” does not apply where a police officer affirmatively intervenes in a dangerous situation and negligently injures a bystander by actions that deviate from clearly accepted and established protocols and procedures. (See Rodriguez v City of New York, 189 AD2d 166, 178 [1st Dept 1993].) As such, where police officers deviated from standard police procedures by firing their guns, thereby injuring a bystander and killing a hostage in two separate incidents, the municipality could not invoke the “professional judgment rule” to avoid liability. (See Lubecki v City of New York, 304 AD2d at 233-234; Rodriguez v City of New York, 189 AD2d at 178.)
In this case, Mr. Ubiles was an innocent bystander, and his car was damaged as a direct result of Deputy Sheriff Edwards’ affirmative intervention in a dangerous situation. There was no evidence, however, that Deputy Sheriff Edwards deviated from any accepted and established protocols or procedures when he did so. Accordingly, this exception to the “professional judgment rule” does not apply to Mr. Ubiles’ claims.
Similarly, the “professional judgment rule” does not apply where a police officer’s actions are so unprofessional that they demonstrate a total failure to exercise reasonable discretion. (See Haddock v City of New York, 75 NY2d 478, 485 [1990].) However else they may be characterized, Deputy Sheriff Edwards’ actions did not amount to a total failure to exercise reasonable discretion. In the heat of an emergency situation, the Deputy Sheriff reasonably chose to bring the man in his custody to a place in the parking lot that he perceived was safer for both him and the man than remaining totally exposed in the open parking lot. Thus, this exception to the “professional judgment rule” is unavailing to Mr. Ubiles.
*379 Next, the “professional judgment rule” does not apply where police officers’ use of excessive force results in harm to bystanders. (See Cusanelli v New York City Tr. Auth., 20 AD3d 319 [1st Dept 2005], lv denied 5 NY3d 714 [2005].) Here, although the force used by Deputy Sheriff Edwards when he pushed the man against Mr. Ubiles’ car caused the damage to the car, Mr. Ubiles did not meet his burden of showing that the force used was excessive.[1] Accordingly, like the other exceptions, this exception to the “professional judgment rule” is not available to Mr. Ubiles.[2]
Finally, the “professional judgment rule” does not immunize a municipality from liability for damages inflicted by police cars driven by police officers. (See, e.g., Palmer v City of Syracuse, 13 AD3d 1229 [4th Dept 2004].) Liability in police vehicle accident cases, however, is expressly authorized by Vehicle and Traffic Law § 1104. Pursuant to that statutory provision, a driver of an authorized emergency vehicle is not “protected] . . . from the consequences of his [or her] reckless disregard for the safety of others.” (Vehicle and Traffic Law § 1104 [4] [e].) No analogous statute creates an exception to the “professional judgment rule” in situations like that in the instant case.
Even if the “professional judgment rule” did not immunize the Sheriffs Department from liability in this case, Mr. Ubiles’ claim would nonetheless fail.
To prevail on a negligence claim, an injured party must prove, by the preponderance of the evidence, that: (1) the person owed a duty to the injured party; (2) the person failed to exercise reasonable care under the circumstances; and (3) the person’s failure to exercise reasonable care under the circumstances proximately caused the injuries or damage suffered. (See 79 NY Jur 2d Negligence § 1.) A more restrictive standard governs, however, when the allegedly negligent person’s actions occur in the context of an emergency situation. Under the “emergency doctrine” of common-law tort *380 theory, a person who is faced with an emergency and who acts without an opportunity to consider alternative actions is not negligent if he or she acts as a reasonably prudent person would act in the same emergency, even if it later appears that he or she did not make the safest choice or exercise the best judgment. (See PJI 2:14 [2005 Supp].)
The evidence in this case overwhelmingly demonstrates that emergency circumstances existed that required Deputy Sheriff Edwards to act swiftly and decisively to protect himself and the man in his custody. When Deputy Sheriff Edwards took the man in custody, hundreds of people were involved in a melee around him. Others surrounded and threatened him. He was not aware of any other law enforcement officials in the immediate vicinity who could give him necessary backup or assistance. As such, when, amid the commotion and confusion, Deputy Sheriff Edwards pushed the man in his custody against Mr. Ubiles’ nearby car, he was acting as a reasonably prudent law enforcement official would act in similar emergency circumstances. (See, e.g., Whiteside v City of New York, 293 AD2d 743 [2d Dept 2002] [given the emergency circumstances, police officer was not liable for the injuries suffered by plaintiff when the person with whom plaintiff was fighting slashed plaintiff with a box cutter as the police officer grabbed plaintiff and attempted to pull her away].)
Under all the circumstances, therefore, Mr. Ubiles has failed to satisfy his burden of showing that Deputy Sheriff Edwards was negligent when his actions caused damage to Mr. Ubiles’ automobile.
Conclusion
Undeniably and unfortunately, Mr. Ubiles’ car was in the proverbial wrong place at the wrong time. If the disturbance in the parking lot had not erupted, and if Deputy Sheriff Edwards had not shoved another person into his automobile, Mr. Ubiles’ car would not have been damaged. But under common-law tort theory, not all damage caused by others is the result of negligence, and only negligent conduct can result in liability. In this case, plaintiff has not met his burden of showing, by a preponderance of the evidence, that Deputy Sheriff Edwards’ conduct was negligent. For this reason, even though Deputy Sheriff Edwards’ actions caused the damage to Mr. Ubiles’ car, defendant Sheriffs Department is not legally liable for the damage.
*381 Accordingly, plaintiff Jesus Ubiles’ claims against defendant Monroe County Sheriffs Department are dismissed.[3]

. The court makes no findings as to whether the force used by Deputy Sheriff Edwards to take the man in custody was excessive.

. Defendant also argues that the Sheriffs Department is immune from liability because it owed no “special duty” to Mr. Ubiles or his car. The “special duty” immunity rule, however, has no relevance to cases where, as here, a police officer directly inflicts damage on the injured party. (See Ohdan v City of New York, 268 AD2d 86, 94 [1st Dept 2000, Rosenberger, J.P., dissenting], lv denied 95 NY2d 769 [2000]; Walsh v Town of Cheektowaga, 237 AD2d 947, 947-948 [4th Dept 1997], lv dismissed 90 NY2d 889 [1997]; Rodriguez v City of New York, 189 AD2d at 172.)

. Although defendant is not legally liable for the damage that Deputy Sheriff Edwards caused to Mr. Ubiles’ car, the law does not prevent the Monroe County Sheriffs Department from offering some compensation to Mr. Ubiles. The court urges the Sheriffs Department to consider such a resolution in the interests of goodwill and community relations.