*663 OPINION OF THE COURT
Katherine A. Levine, J.
Plaintiff Donna Robbins brought this action to recoup $5,000 from the defendant City of New York based upon the New York City Police Department’s alleged negligent handling of her vehicle which ultimately resulted in her vehicle being demolished. She contends through her attorney that her vehicle was towed after her husband was arrested and that she was unsuccessful in her attempts to locate where the Police Department had towed her car and hence was unable to recover her vehicle. This case involves the juxtaposition of certain duties imposed upon the Police Department by its Patrol Guide Manual (Guide) with the doctrine that the “professional judgment rule” shields the police department from liability for the negligent acts of its employees. It also calls into question what affirmative steps a plaintiff must take to obtain her vehicle.
The parties do not contest that on August 2, 2007, the police arrested plaintiffs husband, Pete Robbins, for driving a 1999 Pontiac while under the influence of alcohol which resulted in Mr. Robbins crashing and substantially damaging the vehicle. The car was registered in plaintiffs name. Defendant, through its witness, Police Officer Aundahl, testified that he arrived at the scene of the accident and saw that plaintiffs car had hit three parked cars upon exiting the parkway. He testified that plaintiffs husband was intoxicated and told him that his license was suspended. Aundahl testified that the vehicle was “totaled” — the engine was cracked and leaking fluid and the radiator was destroyed. Officer Aundahl testified that plaintiff showed up at the scene, viewed the destroyed car, and took a lounge chair out of the trunk. Aundahl handcuffed and arrested Robbins for DWI and driving with a suspended license.
Mr. Robbins testified that he looked at the car right after the accident and saw some damage to the front of the car and then “passed out.” He was arrested and released two days after the accident. He then went to the Precinct to locate the car and take the plates off, since the police incident report had indicated that the car had been towed to the 120th Precinct. Robbins claims that he has been an auto mechanic for 20 years and his intention was to repair the vehicle and to cancel the insurance until the car was repaired. Plaintiff submitted as evidence in support of her claim a Kelley Blue Book suggested retail value for a 1999 Pontiac Grand Am in excellent condition as $5,960. Robbins claims that the value of the car was only diminished by *664 $1,000 because only the car’s nose was pushed in but provided no proof for this assertion.
Plaintiff testified that she went to Fix a Dent after the accident and it towed the vehicle to the 120th Precinct. She claims that she never again spoke to her husband about what happened to the vehicle. At some point plaintiff tried to find the car. She went to the 120th Precinct which no longer had the car. No one knew where it was but all of a sudden it showed up at the Polishing Pad. She learned about the Polishing Pad because “we were told that.”
Officer Aundahl testified that he exercised his discretion in removing the substantially damaged vehicle, which constituted a roadway hazard, to the 120th Precinct. Aundahl determined that since Robbins’ wife was the true owner of the vehicle, the car could not be impounded or seized. Pete Robbins gave him his wife’s alleged cell phone and home numbers but when the officer called, the person who answered the phones was not Mrs. Robbins. Aundahl admitted that after making one round of calls he did nothing else to locate plaintiff so as to obtain her permission to do something with the car. Rather, he asked Mr. Robbins what he wanted to do with the car and Robbins told him to call his contact at the Polishing Pad and have the car towed, which Officer Aundahl did. The Polishing Pad gave Aundahl “a little receipt” for the car which Aundahl gave Robbins on the day of his arraignment.
After being notified of this instant action, Officer Aundahl testified that he went to the Polishing Pa.d to ascertain what had happened to the Robbins’ car. The Polishing Pad told him that Robbins had visited the Pad on or about August 4th and after seeing that the car was a total wreck he took the plates off and abandoned it. After storing the car for two months, the Polishing Pad crushed the car. However, Mr. Robbins denies ever going to the Polishing Pad to remove the plates or the vehicle. Nor did he recall anyone contacting him from the Polishing Pad to remove the vehicle.
In light of these facts the court must determine whether the City, through the Police Department, is liable to some degree for the Polishing Pad’s destruction of the car. In other words, but for the Police Department’s ultimate release of plaintiffs car to the Polishing Pad, would plaintiff still have her car and what would the value of the car be? Plaintiff contends that the City is liable because it failed to get in touch with her to ascertain what to do with the car. In support of her claim, plaintiff sent *665 the court excerpts from the 1995 version of the Police Department’s Patrol Guide.
The City contends that the Patrol Guide “is only a guide and nothing more” and that the provisions contained therein cannot constitute a basis against which to find liability against the City. It further contends, in a somewhat contradictory fashion, that there is no provision in the Patrol Guide that even covers this situation and that Officer Aundahl therefore cannot be found liable for his exercise of discretion.
General Municipal Law § 50-j (1) provides that local governmental entities are “liable for . . . any negligent act or tort [committed by a police officer], provided such police officer, at the time of the negligent act. . . was acting in the performance of his duties and within the scope of his employment.” However, notwithstanding this statute, the “professional judgment rule,” with few exceptions, “shields a government entity from liability for the negligent acts of law enforcement personnel” (Ubiles v Monroe County Sheriff’s Dept., 13 Misc 3d 375, 377 [Rochester City Ct 2006]). To hold a municipality liable for the negligent performance of a discretionary act, “a plaintiff must establish a special relationship with the municipality” (Kovit v Estate of Hallums, 4 NY3d 499, 506 [2005]). Absent a special relationship creating a municipal duty to exercise care for the benefit of a particular class of individuals, the municipality cannot be held liable. (Id.) Thus, a municipality is immune from suit from liability for a police officer’s negligent actions, if said actions involve the exercise of discretion and judgment, even if, in retrospect, said actions evinced poor judgment, provided that said officer’s actions are not inconsistent with acceptable police practice. (Ubiles, 13 Misc 3d at 377-378; see Arias v City of New York, 22 AD3d 436, 437 [2d Dept 2005].)
Given the aforementioned precedent, the Police Department cannot be held liable for its actions with respect to plaintiffs car unless those actions were inconsistent with acceptable police practice. Since even the City points to the Patrol Guide to argue its position, albeit in the negative — i.e., that the Guide does not address what the officer should have done in the instant matter — this court deems the Guide to be an indicia of acceptable police practices. As such, it will search the Guide to ascertain what, if any police practices might govern the situation presented herein and specifically, whether the Guide supports the defendant’s contention that it was without authority to impound the vehicle since plaintiff, rather than Mr. Robbins, *666 was the owner of the vehicle and the police could not locate plaintiff.
Section 218-01 of the 2005 Patrol Guide discusses the general procedures for the invoicing of property. Section 218-02 provides that all property listed on an invoice shall be returned, after set procedures are followed, to the legal claimant. Guide § 218-12 sets forth procedures for safeguarding vehicles in police custody when it is “necessary to store a vehicle.” It mandates that the vehicle be locked and parked in a secure location. It notes that “[a] vehicle may be safeguarded at the command for . . . 48 . . . hours when not required as evidence or not the subject of forfeiture proceedings. A vehicle not released to the owner or his/ her representative within ... 48 .. . hours will be removed to the appropriate Property Clerk storage facility.” (Guide § 218-12 [emphasis added].)
Plaintiff submitted section 113-42 of the 1995 Patrol Guide, which addresses invoicing vehicles coming into police custody as “arrest evidence, investigatory evidence, for forfeiture proceedings or to determine the true owner.” This section apparently has been revised and incorporated into section 218-19 of the 2005 Patrol Guide which the court will accept as the most current provision of the Guide. Section 218-19 specifies four situations where vehicles should be taken into police custody: as arrest evidence, investigatory evidence, for forfeiture proceedings or to determine the true owner. None of these categories apply to the instant matter.
There are seven types of arrest which require an officer to seize and invoice a vehicle as arrest evidence. (Patrol Guide § 218-19 [13].) While none of these categories appear to cover Mr. Robbins’ arrest, the Patrol Guide sets forth under the clause entitled “Additional Data” that whenever an arrest is effected involving a vehicle for a charge other than the seven enumerated in subdivision (13), “the arresting officer will consult with his supervisor to determine whether the vehicle shall be seized.” The supervisor shall in turn consult with the assistant district attorney as to whether the vehicle shall be seized and if the assistant district attorney is not available, “the vehicle will be invoiced and secured at the station house” (id.). There is no mention that the owner must be present in order for the car to be seized. Should the district attorney determine that the car is not needed as evidence, “it will be released to the registered owner or his representative. If the owner cannot be located, the vehicle will be sent to the Property Clerk Vehicle Pound for safekeeping.” (Id.)
*667 Also instructive as to the Police Department practices regarding vehicles is section 217-01, which requires that vehicles be removed from the roadway as soon as practical. Section 217-09, entitled “Directed Accident Response Program (D.A.R.E)” sets forth that “[a] uniformed officer may authorize the removal of a vehicle which cannot be safely driven if the owner/operator is incapacitated, is not present, or refuses to authorize the tow.” (Patrol Guide § 217-09 [2] [b].) The officer is authorized to determine that a tow truck is needed and he then must follow procedures for notifying the tow operator. A tow truck can only be dispatched by the Communications Section dispatcher and must be licensed by the Department of Consumer Affairs. The police officer must inform the motorist involved of the name of the tow company responding and supply the motorist with the telephone number of the tow company. Subdivision (14) of this section provides that the reporting officer must receive the information regarding a vehicle which is towed without the owner/ operator’s knowledge (“e.g., operator unconscious and removed to hospital, no operator with vehicle, vehicle is parked and is now impeding traffic”) and enter it into the computer system utilizing the “IMPOUND screen.” He must “[e]nsure that notification is sent to registered owner of the vehicle.” (Patrol Guide § 217-09 [14] [a].)
The foregoing practices negate Officer Aundahl’s claim that he was without authority to seize the vehicle because he could not locate plaintiff. Since Aundahl arrested Mr. Robbins at the scene, he should have contacted the assistant district attorney and ascertained whether the car was needed for evidence. There is no evidence that Aundahl even attempted to contact the assistant district attorney. At the very minimum, once the car was towed to the 120th Precinct it should have been invoiced and secured at the station house. Section 218-12 also mandates that if the vehicle is not needed as evidence, it should be released to the registered owner or his representative. If the owner cannot be located, the vehicle will be sent to the Property Clerk Vehicle Pound for safekeeping. Defendant offered no explanation as to why this procedure was not followed. In fact this procedure specifically contradicts the officer’s reasoning since the storage of the vehicle in the property clerk’s pound is mandated when the owner cannot be found. To rely upon the representations of an individual who was arrested for DWI and driving with a suspended license at the minimum evinces a lack of judgment. Finally, even where there is no need to seize a vehicle, a vehicle *668 which is causing a traffic hazard, etc., must be towed away by an authorized and licensed tow company to an authorized lot and stringent provisions for the invoicing of the car and notification to the owner must be followed.
The court thus finds that the Police Department acted negligently and in violation of its Guide by allowing the car to be towed to the Polishing Pad, regardless of whether Mr. Robbins actually told the Department to have his car towed there. Aundahl should have made another effort to obtain the correct contact number for plaintiff before he decided to release the car. The court does not understand why the officer did not confront Mr. Robbins about his wife’s whereabouts before allegedly relying upon Mr. Robbins’ wishes as to what to do with the car. It appears that upon failing to locate plaintiff, the police should have invoiced the vehicle with the Property Clerk Vehicle Pound or had the car towed by a licensed towing company to a licensed pound and obtained the proper paper work, none of which occurred in the instant matter.
However, the court has serious reservations about the credibility of both plaintiff and her husband. They appeared before the court as a couple who were both aggrieved due to the destruction of the car. Yet at the time of Mr. Robbins’ arrest, there appears to have been a complete disconnect between plaintiff and her husband. Plaintiff testified at one point that she had no further contact with her husband about the car after the accident. The officer testified that the phone numbers Mr. Robbins gave him to contact his wife were incorrect, and the court does not understand why plaintiff, as the owner of the vehicle, did not go down to the precinct on the day after it was impounded to take care of her vehicle, especially since her husband was incapacitated due to his inebriation.
To compound this enigma, Mr. Robbins testified that he has 20 years’ experience as an auto mechanic. If that is so, why did they not make every effort to retrieve the car so Mr. Robbins could make the necessary repairs? Plaintiff conceded that she knew the car was at the Polishing Pad at some point before it was destroyed. The rhetorical question again must be posed— why did the Robbinses not take the car from the Pad? Why would the Robbinses allow their insurance to lapse until the car was repaired unless the car was in need of such extensive repairs that they either did not have the money to repair the car or just wanted to dispose of the car. Furthermore, since Mr. Robbins is an auto mechanic, he could easily have presented the two *669 required estimates to repair the car in order to prove the car’s current value. The evidence submitted by plaintiff as to the car’s worth was for a 1999 Pontiac in “excellent condition.” Yet both parties conceded that the car had extensive damage after the accident.
In light, of the above, the court awards plaintiff $1,000 as compensation for the Police Department’s failure to follow its own practices in safeguarding the vehicle either at the Police Department or a licensed tow company.